UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STONE W. TREADWELL,

     Plaintiff,

v.                           Case No. 8:25-cv-448-KKM-NHA

ALLY BANK, and
FIRST CHOICE TOWING,
RECOVERY AND TRANSPORT, LLC.

     Defendants.
_____/

## REPORT AND RECOMMENDATIONS

Plaintiff Stone W. Treadwell, who is not represented by an attorney, moves to bring a lawsuit without pre-paying the filing fee. Doc. 2. I respectfully recommend that Plaintiff's motion to proceed without pre-paying the filing fee (Doc. 2) be denied without prejudice; that all claims against Defendant Ally Bank and Counts 1 through 5, against Defendant First Choice Towing, Recovery, and Transport, be dismissed with prejudice (meaning Mr. Treadwell could not re-file those claims); and that Counts 6 through 15 against First Choice Towing be dismissed without prejudice (meaning Mr. Treadwell could re-file those claims). I further recommend that Mr. Treadwell be given 30 days to either (1) pay the filing fee or (2) file a Second Amended Complaint against

First Choice Towing as well as a new motion to proceed without pre-paying the filing fee.

## I. <u>Background</u>

In this action, Plaintiff sues Ally and First Choice Towing for violations of the Fair Debt Collection Practices Act ("FDCPA") and several Florida Statutes. Am. Compl. (Doc. 5). But this is not the first time these parties have met in court.

On September 20, 2023, Defendant Ally Bank brought an action against Mr. Treadwell and Kadijah Fletcher in the County Court of the Sixth Judicial Circuit for Pasco County, Florida. *Ally Bank v. Treadwell*, No. 2023 CC 004347 (Fla. Pasco Cnty. Ct. 2023) ("*State Court Case*").

In that action, Ally alleged the following: In September 2022, Mr. Treadwell and Ms. Fletcher purchased a 2018 BMW 3 Series. *State Court Case*, Compl. (Doc. 3) ¶ 4. Ally Bank financed that purchase. *Id.* Mr. Treadwell, Ms. Fletcher, and Ally entered a Retail Installment Sale Contract (the "Contract"), in which Mr. Treadwell and Ms. Fletcher agreed to make monthly payments to Ally. *Id.* ¶ 4, Ex. A. Mr. Treadwell and Ms. Fletcher failed to make the payment due on October 30, 2022, and all payments thereafter. *Id.* ¶ 8.

Ally brought a claim against Mr. Treadwell and Ms. Fletcher for breach of the Contract (by failing to make payments). *Id.* ¶¶ 20–22. Although Ally

sought repossession of the vehicle as a legal remedy, Ally alleged that the Contract allowed it to take immediate possession of the Vehicle, with or without resort to judicial process, upon the default. *Id.* ¶ 10.

On February 21, 2024, while the *State Court Case* was pending, First Choice Towing (a Defendant in this action), acting at Ally's behest, appeared at Mr. Treadwell's workplace and attempted to seize the Vehicle. *State Court Case*, Doc. 19, p. 1; *see also* Compl. (Doc. 5), ¶ 8. According to Mr. Treadwell and Ms. Fletcher, First Choice Towing repeatedly represented that it had a "court order signed by a judge" ordering repossession of the Vehicle. *State Court Case*, Doc. 19, p. 1. Mr. Treadwell called a manager at First Choice Towing to ask for the order, but the manager said it was "private," used "profane language," and threatened Mr. Treadwell and Ms. Fletcher with arrest for "grand theft auto" should they fail to surrender the Vehicle. *Id.* First Choice Towing ultimately failed to seize the Vehicle, because Ms. Fletcher remained inside of it. *Id.*; *State Court Case*, Doc. 50 fn. 1.

Seven days later, on February 28, 2023, Mr. Treadwell and Ms. Fletcher asserted sixteen counterclaims against Ally, and one third-party claim against First Choice Towing, in the *State Court Case*. *State Court Case*, Doc. 24 at pp. 7–8. Mr. Treadwell and Ms. Fletcher claimed, in the counts against Ally, that Ally breached its fiduciary duty and violated the Florida Deceptive and Unfair

Trade Practices Act ("FDUTPA"), the Florida Constitution, the National Currency/Banking Act, the Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Fair Credit Billing Act, and Fla. Stat. § 675.111 (Florida's codification of the Uniform Commercial Code). *Id.* The claim against First Choice Towing alleged that First Choice Towing, as a "Third Party Assignee" of Ally, violated the FDCPA by threatening arrest and by claiming to have a court order. *Id.* at p. 8. The *State Court Case* docket reflects that First Choice Towing, while named as a third-party Defendant, was not properly served and never appeared in that action. *See State Court Case.*

On June 14, 2024, Ally filed a motion to dismiss the counterclaims, arguing that the claims were unintelligible, unsupported legal conclusions, and insufficient to state a cause of action.[1] *State Court Case*, Doc. 50, p. 8. On August 19, 2024, the State Court granted Ally's motion to dismiss the counterclaims, dismissing every count except for the FDCPA claim against First Choice Towing (whom, again, was not served). *State Court Case*, Doc. 58, p. 1. The State Court invited Ally and Mr. Treadwell to "submit additional

---

[1] Ally did not move to dismiss the FDCPA claim asserted against First Choice Towing. *State Court Case*, Docs. 50, 60 ¶ 12 (Ally stating that the FDCPA count "is not aimed at [Ally]. It is aimed directly at First Choice [Towing]. This is why Plaintiff addressed 16 of the 17 counts raised in [the] Counterclaim, excluding [the FDCPA count] only.").

memorandum in support of their respective positions on the viability of [the FDCPA claim]." *Id.* Although Mr. Treadwell appeared to assert this claim against only First Choice Towing, the State Court construed it as a claim solely against Ally under a theory of vicarious liability. *Id.*; *see also State Court Case*, Docs. 24, 63. After considering the additional briefing, on October 24, 2024, the State Court dismissed the FDCPA claim, finding that the claim could not be asserted against Ally because Mr. Treadwell and Ms. Fletcher failed to set forth a factual basis supporting an agency relationship between First Choice Towing and Ally such that Ally could be found liable for First Choice Towing's alleged conduct. *State Court Case*, Doc. 63.

On September 3, 2024, Mr. Treadwell and Ms. Fletcher moved for leave to file Amended Counterclaims against Ally, First Choice Towing, and First Choice Towing's manager, Aldridge Pite, for violations of the FDCPA, Florida's Consumer Collection Practices Act ("FCCPA"), and the FDUTPA, as well as for denial of power of attorney and misrepresentation. *State Court Case*, Docs. 61, 62. The State Court denied their motion. *State Court Case*, Docs. 62, 65. On November 7, 2024, Ally voluntarily dismissed its case against Mr. Treadwell and Ms. Fletcher without prejudice, and the case was closed. *State Court Case*, Docs. 66, 67.

On February 21, 2025,[2] Mr. Treadwell sued Ally and First Choice Towing in this Court. Compl. (Doc. 1). This action, like the counterclaims in the *State Court Case*, stems from First Choice Towing's attempt to seize Mr. Treadwell and Ms. Fletcher's Vehicle on February 21, 2024. Am. Compl. (Doc. 5) at p. 3; *compare with State Court Case*, Doc. 24 at p. 7. In the operative complaint here (the Amended Complaint), Mr. Treadwell pleads facts identical to those in the *State Court Case*—First Choice Towing repeatedly represented that it had a "court order signed by a judge" ordering repossession of the vehicle. Am. Compl. (Doc. 5) at p. 3; *compare with State Court Case*, Doc. 24 at p. 7. Mr. Treadwell called the manager of First Choice Towing to ask for the court order, but the manager used "profane language," claimed he did not need to present it because it was a "private court order," and said, "we are getting the car no matter what you say." Am. Compl. (Doc. 5) at p. 3; *compare with State Court Case*, Docs. 19, p. 1 *and* 24 at p. 7. The manager threatened that Mr. Treadwell "was going to be charged with 'Grant Theft Auto' and arrested by the police if

---

[2] An individual may file suit to enforce the FDCPA's provisions "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Federal Rule of Civil Procedure 6(a) provides that when a time period "is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period." Fed. R. Civ. P. 6(a)(1)(A). This means that the date the FDCPA violation occurred is not included in the one-year limitations period. Accordingly, Plaintiff's Complaint, which was filed exactly one year after the alleged violation occurred, was timely.

[he] did not let them seize the vehicle." Am. Compl. (Doc. 5) at p. 3; *compare with State Court Case*, Doc. 24 at p. 7. And First Choice Towing "block[ed] in the vehicle from behind" for over an hour while Ms. Fletcher was inside. Am. Compl. (Doc. 5) at p. 4; *compare with State Court Case*, Docs. 19, p. 1 *and* 24 at p. 7.

In this action, Mr. Treadwell asserts fifteen claims, each against both Ally[3] and First Choice Towing:

Count 1: Violation of 15 U.S.C. § 1692d(1) (part of the FDCPA), which makes it unlawful for a debt collector to "harass, oppress, or abuse any person in connection with the collection of a debt" by "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." Mr. Treadwell alleges the Defendants violated this section when First Choice Towing "blocked in" the Vehicle while Ms. Fletcher was inside, and "threaten[ed] to harm [Mr. Treadwell's] property, reputation, and person." Am. Compl. (Doc. 5) at p. 4.

Count 2: Violation of 15 U.S.C. § 1692d(2) (part of the FDCPA), which makes it unlawful for a debt collector to use "obscene or profane language or

---

[3] Plaintiff does not plead that Ally is directly responsible for the alleged statutory violations, but instead proceeds under the theory that Ally is liable for the acts of its "third party assign[], First Choice Towing." Am. Compl. (Doc. 5) at p. 3.

language the natural consequence of which is to abuse the hearer or reader." Mr. Treadwell alleges the Defendants violated this section when the manager of First Choice Towing "used profane and obscene language" on the phone. Am. Compl. (Doc. 5) at pp. 3–4.

Count 3: First, violation of 15 U.S.C. § 1692e(4) (part of the FDCPA), which makes it unlawful for a debt collector to represent or imply "that nonpayment of any debt will result in the arrest or imprisonment of any person . . . unless such action is lawful and . . . [they] intend[] to take such action." Second, violation of 15 U.S.C. § 1692e(5), which makes it unlawful for a debt collector to make a "threat to take any action that cannot legally be taken or that is not intended to be taken." Third, violation of 15 U.S.C. § 1692e(7), which makes it unlawful for a debt collector to falsely represent or imply "that the consumer committed any crime or other conduct in order to disgrace the consumer." Mr. Treadwell alleges the Defendants violated these sections of the FDCPA by threatening to have him arrested for Grand Theft Auto for the non-payment of debt. Am. Compl. (Doc. 5) at p. 4.

Count 4: First, violation of 15 U.S.C. § 1692e(10) (part of the FDCPA), which makes it unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt." Second, violation of 15 U.S.C. § 1692e(13) which makes it unlawful for a debt collector to falsely

represent or imply "that documents are legal process." Mr. Treadwell alleges the Defendants violated these sections of the FDCPA by misrepresenting that they" had a judicial court order" providing them with "the right to take the vehicle." Am. Compl. (Doc. 5) at p. 4.

Count 5: Violation of 15 U.S.C. § 1692e(14) (part of the FDCPA), which makes it unlawful for a debt collector to use "any business, company, or organization name other than the true name of the debt collector's business, company, or organization." Mr. Treadwell alleges the Defendants violated this section by misrepresenting that Ally was "bringing the claim against Plaintiffs when . . . First Choice Towing . . . [was] collecting the debt and potentially has been sold." Am. Compl. (Doc. 5) at p. 5.

Count 6: Violation of 15 U.S.C. § 1692f(6)(A)–(B) (part of the FDCPA), which makes it unlawful for a debt collector to take or threaten "to take any nonjudicial action to effect dispossession or disablement of property if— (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;" or "(B) there is no present intention to take possession of the property." Mr. Treadwell alleges that the Defendants violated this section because they had no intent to take possession and no right to possession through an enforceable security interest. Am. Compl. (Doc. 5) at p. 5.

Count 7: Violation of 15 U.S.C. § 1692j(a) (part of the FDCPA), which makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." Mr. Treadwell alleges the Defendants violated this section because they "furnish[ed] forms to create the false belief that a person other than the creditor is participating in the collection or in an attempt to collect a debt when such person is not so participating." Am. Compl. (Doc. 5) at p. 5.

Count 8: Violation of Fla. Stat. § 501.204 (part of the FDUTPA), which makes it unlawful to use "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mr. Treadwell alleges the Defendants violated this section because they used "unfair and deceptive practices in the conduct of trade or commerce." Am. Compl. (Doc. 5) at p. 6.

Count 9: First, violation of § 559.72(2), Florida Statutes, which makes it unlawful for a person to "[u]se or threaten force or violence" when collecting consumer debts. Second, violation of § 559.72(3), Florida Statutes, which makes it unlawful for a person collecting consumer debts to "[t]ell a debtor who

disputes a consumer debt that she or he . . . will disclose to another . . . information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed . . . ." Third, violation of § 559.72(4), Florida Statutes, which makes it unlawful for a person collecting consumer debts to "[c]ommunicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor." Mr. Treadwell alleges the Defendants violated these sections of the Florida Consumer Collection Practices Act ("FCCPA") by threatening his "property, reputation and person," by coming to his workplace and "blocking in the vehicle" in front of the store where he was employed. Am. Compl. (Doc. 5) at p. 6.

Claim 10: Violation of § 559.72(8), Florida Statutes (part of the FCCPA), which makes it unlawful for a person collecting consumer debts to "[u]se profane, obscene, vulgar, or willfully abusive language in communicating with the debtor or any member of her or his family." Mr. Treadwell alleges the Defendants violated this section when the First Choice Towing manager used "profane and obscene language" on the phone. Am. Compl. (Doc. 5) at pp. 3, 6.

Claim 11: Violation of § 559.72(9), Florida Statutes (part of the FCCPA), which makes it unlawful for a person collecting consumer debts to "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt

is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Mr. Treadwell alleges the Defendants violated this section by threatening him with arrest for "Grand Theft Auto for the non-payment of debt." Am. Compl. (Doc. 5) at p. 6.

Claim 12: Violation of § 559.72(10), Florida Statutes (part of the FCCPA), which makes it unlawful for a person collecting consumer debts to "[u]se a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law, when it is not." Mr. Treadwell alleges the Defendants violated this section when they falsely claimed they "had a judicial court order" giving them "the right to take the vehicle." Am. Compl. (Doc. 5) at p. 7.

Claim 13: Additional violation of § 559.72(10), Florida Statutes. Mr. Treadwell alleges the Defendants also violated this section by "threatening to take non judicial actions" without a right to possession through an "enforceable security interest." Am. Compl. (Doc. 5) at p. 7.

Claim 14: Additional violation of § 501.204, Florida Statutes (part of the FDUTPA), which, again, makes it unlawful to use "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mr. Treadwell alleges the

Defendants violated this section by misrepresenting that Ally was "bringing the claim against Plaintiffs when . . . First Choice Towing . . . [was] collecting the debt and potentially has been sold." Am. Compl. (Doc. 5) at p. 7.

Claim 15: Additional violation of § 559.72(4), Florida Statutes, which, again, makes it unlawful to "[c]ommunicate or threaten to communicate with a debtor's employer before obtaining final judgment against the debtor, unless the debtor gives her or his permission in writing to contact her or his employer or acknowledges in writing the existence of the debt after the debt has been placed for collection." Mr. Treadwell alleges the Defendants also violated this section by "threaten[ing] to communicate with [his] employer before obtaining final judgment," without Mr. Treadwell's permission. Am. Compl. (Doc. 5) at p. 8.

## II. <u>Standard of Review/Applicable Law</u>

The federal statute that governs the right to bring a lawsuit without pre-paying a filing fee, 28 U.S.C. § 1915, "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Accordingly, the statute permits a litigant to commence an action in federal court "by filing in good faith an affidavit stating . . . that he is unable to pay the costs of the lawsuit." *Id.* "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the

public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* To that end, section 1915 provides that a court shall dismiss a case if the court determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous when a complaint lacks an arguable basis either in law or in fact. *Neitzke*, 490 U.S. at 325.

Federal courts must hold pro se filings (meaning those papers filed by a party who represents himself) to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). More specifically, a court must "provide[] pro se parties wide latitude when construing their pleadings and papers" and "use common sense to determine what relief the party desires." *S.E.C. v. Elliot*, 953 F.2d 1560, 1582 (11th Cir. 1992). Nonetheless, courts need not exempt pro se litigants from complying with the requirements imposed by the law and rules of procedure. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff describe what action a defendant took that violated the law. A complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard in Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Conclusions and characterizations of conduct are insufficient; a complaint must allege enough facts to show that each element of an offense is satisfied. *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). The allegations in the complaint "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

Independent of the Court's duty under section 1915(e) to evaluate the claim of a party proceeding in forma pauperis, the Court also has an obligation to ensure that it has subject matter jurisdiction over a case. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

"Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000) (citing *University*

*of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 409–10 (11th Cir. 1999)). First, federal courts have original jurisdiction over all civil actions where (1) the matter in controversy exceeds $75,000, exclusive of interest and costs, and (2) the parties are citizens of different states; this is called diversity jurisdiction. 28 U.S.C. § 1332. Second, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"; this is called federal question jurisdiction. 28 U.S.C. § 1331. A complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983).

III. **Discussion**

Mr. Treadwell asserts federal question jurisdiction. Am. Compl. (Doc. 5), at p. 2. Thus, he must establish a viable claim under federal law. He attempts to do so in Counts 1 through 7, which assert violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq. Id.* Unless Mr. Treadwell states a viable claim in at least one of these counts, this Court does not have jurisdiction over this case.

## A.   All Counts Against Ally are Barred by Res Judicata.

As a threshold matter, I find that Mr. Treadwell does not have a viable cause of action against Defendant Ally on any of his fifteen claims, because he already brought—and lost—claims against Ally that arose from the same nucleus of operative fact, in the *State Court Case*.

Res judicata "bars the filing of claims which were raised or could have been raised in an earlier proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). For the doctrine to apply, four elements must be present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* "Res judicata applies even when 'some new factual allegations have been made, some new relief has been requested, or a new defendant has been added.'" *Johnson v. Girl Scouts of the USA*, 596 F. App'x 797, 799 (11th Cir. 2015) (quoting *Dalton Paving & Constr., Inc. v. S. Green Constr. of Ga., Inc.*, 643 S.E.2d 754, 756 (2007)).

First, res judicata only applies if a final judgment on the merits has issued. In the State Court Case, Ally moved to dismiss Mr. Treadwell's counterclaims "with prejudice." *State Court Case*, Doc. 50 at p. 8. The State Court granted Ally's motion, but did not specify whether the claims were

dismissed with or without prejudice. *State Court Case*, Docs. 58, 63. However, the State Court also denied—without further explanation—Mr. Fletcher's motion to amend his counterclaims. *State Court Case*, Doc. 65. "[R]egardless of [a] state court's reasons for denying leave to amend," when a plaintiff has been denied leave to amend his claims and does not appeal that decision, there has been a final decision on the merits. *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 400 (2d Cir. 1997); *King v. Hoover Group, Inc.,* 958 F.2d 219, 222–23 (8th Cir. 1992) ("It is well settled that denial of leave to amend [a complaint] constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading."); *see also Shannon v. Nat'l R.R. Passenger Corp.*, 780 F. App'x 777, 779 (11th Cir. 2019) (noting the plaintiff's claims were barred by res judicata when the district court, in a prior case, denied her leave to amend her claims and she did not challenge that denial on appeal). Thus, the State Court rendered a final judgment on the merits of Treadwell's Counterclaim by granting Ally's motions to dismiss and denying Mr. Treadwell's request for leave to file an amended counterclaim, *State Court Case*, Docs. 58, 63, 65, because Mr. Treadwell did not appeal the decision to deny his amendment to his pleading. The first factor for res judicata has been met.

Second, the prior decision must have been rendered by a court of competent jurisdiction. "[A] court of competent jurisdiction is a court with a grant of subject-matter jurisdiction covering the case before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017). Most state courts are courts of general jurisdiction—granted authority by their state's constitution to hear any type of case. The Supreme Court has consistently held that "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990). Therefore, as a state court, the County Court of the Sixth Judicial Circuit of Florida was a court of competent jurisdiction to adjudicate Mr. Treadwell's claims against Ally.

Third, the parties, or those in privity with them, must be identical in both suits. Mr. Treadwell and Ally are parties in both the Amended Complaint and the *State Court Case* Counterclaims. Am. Compl. (Doc. 5) at pp. 1, 4–5; *State Court Case*, Doc. 24, pp. 1, 8. Adding First Choice Towing as a defendant in this case does not prevent the application of res judicata. *Johnson*, 596 F. App'x at 799.

Finally, res judicata requires that the cause of action be the same in the present suit as in the prior ones. Generally, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a

former action, . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999); *see also Johnson*, 596 F. App'x at 799 ("Two different claims constitute an identical cause of action when they are based on the same allegations of misconduct."). Both the counterclaims against Ally in the *State Court Case* and the claims against Ally in this case are the same claims for purposes of res judicata, because Plaintiff's allegations in the two cases stem from a common nucleus of operative fact. Namely, Mr. Treadwell pleads nearly identical facts about First Choice Towing's attempted repossession of the Vehicle—and Ally's responsibility for those acts through a theory of vicarious liability—in this case and the *State Court Case. Compare* Am. Compl. (Doc. 5) at p. 3 *with State Court Case*, Doc. 24 at p. 7. Therefore, the same causes of action are involved in both cases.

Thus, because all four elements of res judicata are met, the doctrine bars all of Mr. Treadwell's claims against Ally. I recommend the District Court dismiss these claims with prejudice, meaning Mr. Treadwell could not re-file them.[4]

---

[4] "[A] district court need not allow even a pro se plaintiff leave to amend where an amendment would be futile." *Ross v. Apple, Inc.*, 741 F. App'x 733, 736 (11th Cir. 2018) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

**B. Counts 1 through 5 Against First Choice Towing Fail to State a Viable Claim for Relief, Because it is Not a Debt Collector.**

The purpose of the FDCPA is to prohibit abusive practices by debt collectors. 15 U.S.C. § 1692(e). The FDCPA broadly prohibits "debt collectors" from using unfair, unconscionable, harassing, oppressive, false, deceptive, misleading, and abusive debt-collection practices. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. This language is general, but the statute also prohibits certain specific debt-collection methods.

In Counts 1 through 6, Mr. Treadwell asserts that First Choice Towing's practices violated several of these provisions. But because the FDCPA prohibits "debt collector[s]" from engaging in these practices, 15 U.S.C. §§ 1692d, 1692e, 1692f, in order for Mr. Treadwell to prevail on Counts 1 through 6 against First Choice Towing, he must prove that First Choice Towing is a "debt collector" within the meaning of the FDPCA. *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 468 (2019).[5]

---

[5] Nor does it save the claim that Plaintiff alleges First Choice Towing acted in concert with a debt collector. The majority of courts to have considered the issue have determined that a principal must be a debt collector in order to be held liable for the debt collection activities of another. *See Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996) ("[w]e do not think it would accord with the intent of Congress, as manifested in the terms of the Act, for a company that is not a debt collector to be held vicariously liable"); *see also Rich v. BAC Home Loans Servicing LP,* No. CV–11–00511–PHX–SRB,

The FDCPA first defines "debt collector" as any person who (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Additionally, the FDCPA expands the definition of "debt collector" as to one provision of the Act, stating, "For the purpose of section 1692f(6) of this title, ['debt collector'] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *Id.*

The Supreme Court has called persons or businesses that meet the latter definition "security-interest enforcers." *Obduskey*, 586 U.S. at 467. The Supreme Court has described "repo men" (meaning "those who seize automobiles and other personal property in response to nonpayment") as "security interest enforcers." *Id.* at 477 (also stating the definition includes "those who engage in only nonjudicial foreclosure proceedings"); *see also*

_____

2013 WL 10104612, at *5 (D.Ariz. Dec. 13, 2013) (rejecting aiding and abetting liability under the FDCPA because it "expressly imposes liability only for the violations of a 'debt collector'"); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 175 (1994) ("If ... Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text.")

*Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (noting that a company that repossesses motor vehicles as an agent of creditors who have a security interest was only a "debt collector" within the "security-interest enforcer" definition of the FDCPA).

In *Obduskey v. McCarthy & Holthus LLP*, the Supreme Court considered the argument that "one principally involved in 'the enforcement of security interests' is not a debt collector (except '[f]or the purpose of section 1692f(6)')," 586 U.S. at 469. The Court determined that "security-interest enforcers" are only "debt collectors" for purposes of § 1692f(6) of the FDCPA, and do not fall into the definition of "debt collector" elsewhere within the Act because Congress's inclusion of the broader, limited-purpose definition as to section 1692f(6) "suggests that one who does no more than enforce security interests does *not* fall within the scope of the general definition." *Id.* at 475; *see also id.* at pp. 476–477 (listing other reasons, including reducing conflict with state foreclosure laws and legislative history, that reinforced the Court's conclusion that "enforcers of security interests" do not fall within the narrower definition of "debt collector). Thus, a "debt collector" within the statute's main definition is liable for any of the conduct prohibited by the FDCPA in §§ 1692d, 1692e, and 1692f, but an "enforcer of security interests" can only be liable under § 1692f(6). *Id.*

Counts 1 through 5 of the Amended Complaint assert claims that can be brought only against those who fall within the FDCPA's main, narrower definition of debt collectors. Mr. Treadwell broadly alleges that First Choice Towing is such a "debt collector" by parroting the statutory definition–alleging that First Choice Towing regularly attempts to collect consumer debts and uses mail and the telephone to do so. Doc. 5 at pp. 2–3. However, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). Moreover, when analyzing a complaint for frivolousness under § 1915 a court need not accept a "meritless legal theory" or "fanciful factual allegations." *Neitzke*, 490 U.S. 319, 325, 327, 328–329. Here, the allegation that First Choice Towing—which Mr. Treadwell explains elsewhere was in the business of recovering his Vehicle for the benefit of creditor Ally, Doc. 5 at p. 3—is a "debt collector" within the narrower meaning of the term is belied by the specific facts Plaintiff has pleaded about the actions of the Defendant and is a meritless theory. The law is clear that such a repossession agency is considered a "security-interest enforcer," and not a "debt collector" within the narrower definition of the term. *Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 716 (M.D. Fla. 1997) ("Recovery agency" who towed the plaintiff's vehicle was not acting as a "debt collector" in doing so);

*Wright v. Santander Consumer USA, Inc.*, No. 618CV263ORL22KRS, 2018 WL 2095171 at *3 (M.D. Fla. May 1, 2018) (Repossession agency who towed the plaintiff's vehicle was not a "debt collector"); *Oprecht v. A Supercar Towing & Recovery LLC*, No. 8:24-CV-00784-TPB-AEP, 2024 WL 5055539 at *2 (M.D. Fla. Apr. 23, 2024), *report and recommendation adopted in part*, No. 8:24-CV-784-TPB-AEP, 2024 WL 5055512 (M.D. Fla. May 10, 2024) ("When assessing whether a repossession agency would qualify as a debt collector under the statute, courts have uniformly held that a repossession agency may only be held liable as a 'debt collector' under section 1692(f) of the statue when enforcing a security interest."); *see also Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (noting that a company that repossesses motor vehicles as an agent of creditors who have a security interest was only a "debt collector" for the purpose of section 1692f(6) of the FDCPA).

Thus, Plaintiff's FDCPA claims against First Choice Towing brought under statutory provisions governing only debt collectors—rather than debt collectors *and* security interest enforcers as in section 1692f(6)—are frivolous. First Choice Towing is not a "debt collector" against whom these claims can be brought. I accordingly recommend that the District Court dismiss with prejudice Counts 1 through 5 against First Choice Towing.

### C. Count 6 Against First Choice Towing Fails to State a Viable Claim for Relief, Because Plaintiff's Factual Allegations Defeat His Legal Theory.

In Count 6, Mr. Treadwell alleges that First Choice Towing violated 15 U.S.C. § 1692f(6)(A)–(B), which prohibits debt collectors *and* security enforcers from threatening "to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;" or "(B) there is no present intention to take possession of the property." *Id.*

Mr. Treadwell alleges in this count only that First Choice Towing violated these sections by "threatening to take non judicial actions" without an actual intent to take possession and without a right to possession of the Vehicle through an enforceable security interest. (Doc. 5) at p. 5. In other words, Mr. Treadwell submits only a formulaic recitation of the elements of this cause of action. *Ashcroft*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 557).

To state a claim under subsection (A), Mr. Treadwell needed to plead facts showing that Ally had no present right to possess the Vehicle as collateral through an enforceable security interest. Mr. Treadwell pleads facts establishing that he owed Ally money for the Vehicle, and that First Choice Towing was assigned to seize the Vehicle at Ally's behest. Am. Comp. (Doc. 5) ¶¶ 8, 13. These facts seem to contradict Mr. Treadwell's conclusory statement

within Count Six that First Choice Towing had "no present right to possession of the property claimed as collateral through an enforceable security interest." While Mr. Treadwell pleads there was no court order authorizing repossession of the vehicle, *id.* ¶ 10, he fails to plead that Ally had no right to repossess the vehicle through the financing contract Mr. Treadwell signed with Ally. Accordingly, I find he has failed to state a claim under subsection (A).

To state a claim under subsection (B), Mr. Treadwell needed to plead facts showing that Ally[6] did not intend for First Choice Towing to take possession of the Vehicle. Contrary to his conclusory statement that this is so, Mr. Treadwell alleges that Ally assigned First Choice Towing to seize the vehicle on its behest and that First Choice Towing "attempted to seize the vehicle for over an hour," only desisting because Ms. Fletcher remained inside the Vehicle.  Doc. 5 at p. 3. Thus, by pleading facts demonstrating that Ally intended for First Choice Towing to repossess the Vehicle, and that First Choice Towing acted at Ally's behest, Mr. Treadwell defeats his § 1692f(6)(B) claim. *Hirsch*, 72 F.3d at 1092 (2d Cir. 1995) ("General, conclusory allegations

_____

[6] It is the debt collector's intention, not the security interest enforcer's intention, that is key to this analysis. *See Latham v. Five Bros. Mortg. Co. Servs. & Securing, Inc.*, 669 F. App'x 513, 515 (10th Cir. 2016) (In considering a § 1692f(6)(B) claim, stating, "the *lender* had a 'present intention to take possession of the property,' having declared the loan in default, retained Five Brothers to preserve the property, and commenced foreclosure proceedings in Grand County thereafter." (emphasis added)).

need not be credited, however, when they are belied by more specific allegations of the complaint.").

For this reason, I recommend the District Court dismiss Count 6 against First Choice Towing without prejudice, meaning that Plaintiff could file a Second Amended Complaint asserting a § 1692f(6) claim against First Choice Towing.

### D. Count 7 Against First Choice Towing Also Fails to State a Viable Claim for Relief, Because it is Unsupported by Plaintiff's Factual Allegations.

In Count 7, the final claim arising under a federal statute, Mr. Treadwell alleges that First Choice Towing violated 15 U.S.C. § 1692j(a). Section 1692j holds liable " to the same extent and in the same manner as a debt collector is liable" any person who "design[s], compile[s], and furnish[es] any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer" is seeking to collect the consumer's debt, "when in fact such person is not so participating." This provision was intended to bar the practice commonly known "flat-rating," or "providing a form which creates the false impression that someone (usually a collection agency) besides the actual creditor is "participating" in collecting the debt." *White v. Goodman*, 200 F.3d 1016, 1018 (7th Cir. 2000) ("The provider of the form presumably charges a 'flat rate' for the form; hence the popular

name for the practice."). In other words, the statue seeks to prohibit anyone not involved in the debt collection effort from "lending his name to the creditor for its intimidation value." *Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002). Unlike the other FDCPA claims that Mr. Treadwell brings, a claim under 15 U.S.C. § 1692j(a) may be asserted against a defendant who is not a debt collector. 15 U.S.C. § 1692j(b).

To support his § 1692j(a) claim, Mr. Treadwell simply parrots the requirements of the statute, alleging that First Choice Towing "furnish[ed] forms to create the false belief that a person other than the creditor is participating in the collection or in an attempt to collect a debt when such person is not so participating." Am. Compl. (Doc. 5) at p. 5. But Mr. Treadwell offers no facts describing the "forms" nor identifying the "person" falsely represented to be participating in the debt collection. Therefore, he does not state a viable claim against First Choice Towing under § 1692j(a).[7]

---

[7] I could speculate that the "form" Mr. Treadwell is complaining about is the "court order" that First Choice Towing purported to have. But does not appear from the Complaint that this "form" was ever designed, compiled, or furnished as required by the statute; rather, Mr. Treadwell alleges that First Choice Towing refused to show him the "court order." Am. Compl. (Doc. 5) at p. 3; *see also Hirsch*, 72 F.3d at 1092 ("General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.").

For this reason, I recommend that the District Court dismiss Count 7 against First Choice Towing without prejudice, meaning that Plaintiff could file a Second Amended Complaint asserting a § 1692j(a) claim against First Choice Towing.

### E. Plaintiff's State Law Claims

Finally, because Plaintiff has not stated a viable claim that establishes federal jurisdiction, which would allow this Court to exercise supplemental jurisdiction over his state law claims against First Choice Towing (Counts 8–15), I decline to consider whether the state law claims are viable and recommend that the Court dismiss Counts 8–15 against First Choice Towing without prejudice.

## IV. <u>Conclusion</u>

For the reasons stated, I respectfully recommend that:

(1)    Plaintiff's motion to proceed without pre-paying the filing fee (Doc. 2) be DENIED without prejudice;

(2)    Counts 1–15 against Ally be dismissed with prejudice, meaning Plaintiff cannot refile those claims;

(3)    Counts 1 through 5 against First Choice Towing be dismissed with prejudice, meaning Plaintiff cannot refile those claims;

(4)     Count 6 through 15 against First Choice Towing be dismissed without prejudice, meaning that Plaintiff could re-file those claims in a Second Amended Complaint, addressing the deficiencies identified here;

(5)     Plaintiff be given 30 days from the date of the Court's Order to either pay the filing fee or file a Second Amended Complaint and a new motion to proceed in forma pauperis;

(6)     At the close of the 30-day period, if Plaintiff has failed to file the amended documents, this case be dismissed with prejudice.[8]

Submitted for consideration on July 1, 2025.

NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from

---

[8] I note Plaintiff has already been given one opportunity to file an Amended Complaint. Docs. 3, 5.

31

the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.